# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLIE L. RICHARDSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-20-145-SPS |

## OPINION AND ORDER

The claimant Kellie L. Richardson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 38, 321). She completed up to three years of college work for her education and has worked as a preschool teacher (Tr. 50-51, 364). The claimant alleges that she has been unable to work since an amended alleged onset date of May 4, 2016, due to back problems, hearing problems, and tremors (Tr. 363).

### Procedural History

On March 31, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-8. Her applications were denied. ALJ Jodi B. Levine held an administrative hearing and determined the claimant was not disabled in a written opinion dated September 10, 2019 (Tr. 15-30). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She first found at step four that the claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry/push/pull twenty pounds

occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, and stand/walk six hours out of an eight-hour workday, but that she could never climb ladders/ropes/scaffolds or crawl, only occasionally climb ramps/stairs, and only frequently balance, stoop, kneel, or crouch. Additionally, she found the claimant should avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases, and poor ventilation, as well as unprotected heights, dangerous machinery, and heavy industrial vibration (Tr. 21). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a preschool teacher (Tr. 28). Alternatively, she found at step five that there was work the claimant could perform in the national economy, *e. g.*, merchandise marker, mail sorter, routing clerk, addresser, tube operator, and document preparer (Tr. 29).

## Review

The claimant's sole contention of error is that the ALJ failed to properly evaluate the medical evidence, specifically opinion evidence regarding her tremors, from R. Robert Hoyland Smiley, M.D., who testified as to the claimant's physical impairments at the administrative hearing. The Court finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of essential tremors, chronic pain, and asthma (Tr. 18). The specific medical evidence as to the claimant's tremors reflects that the claimant sought treatment for her tremors as far back as 2014 (Tr. 719). Treatment notes reflect she reported the tremors had been present for twenty years, but that they had worsened since the birth of her son three years previously

(Tr. 719). Dr. Baha A. Abu-Sheh indicated that the claimant's stress was likely contributing to the increase in her tremors (Tr. 721). More recent treatment notes from 2018-2019 indicate she has continued to complain of worsening tremors, including reported difficulty using utensils but ability to perform activities of daily living on her own, and that she has been largely treated with medication (Tr. 922-942). An EMG scan of both upper extremities, performed February 24, 2016, revealed no electrical evidence to suggest any acute ongoing radiculopathy or myopathy on the right upper limb, plexopathy, entrapment neuropathy, or peripheral neuropathy on both upper limbs (Tr. 945-946). Her doctor recommended conservative treatment (Tr. 945).

On October 25, 2014, Dr. William Cooper, D.O., examined the claimant for a previous disability application. Dr. Cooper noted that the claimant had fine tremor of the hands "off and on," but that it was not increased with "intention type efforts" (Tr. 727). He noted she could effectively oppose the thumb to the fingertips and manipulate small objects, as well as grasp tools such as a hammer (Tr. 730).

On July 15, 2017, Dr. Alan Miner, M.D., conducted a physical consultative examination of the claimant. He noted a number of reports of impairments from the claimant, including her tremors (Tr. 568). He acknowledged her resting tremor in her bilateral upper extremities, but stated she had normal hand grip strength and no palpable muscle spasms (Tr. 569). He further noted decreased range of motion in her neck and back but reiterated that her range of motion was within normal limits for bilateral hands, wrists, and spine (Tr. 570). Finally, he noted she could effectively oppose the thumb to the fingertips and manipulate small objects, as well as grasp tools such as a hammer (Tr. 573).

5

State reviewing physicians determined that the claimant could perform light work with no additional limitations (Tr. 118-121, 154-156). On reconsideration, Dr. Judy Marks-Snelling noted the claimant's resting tremor but that she had normal hand grip strength and normal range of motion in her hands (Tr. 156).

At the administrative hearing, Dr. Smiley testified as a medical expert (Tr. 45). He noted her essential tremor but that her neurological exams were normal and that the tremor was not "completely incapacitating" (Tr. 45). He also noted that she cared for her son with special needs and that "[i]t does interfere somewhat with fine handling, and things like that[,]" and that medication had provided little change (Tr. 45). After discussing all of her impairments with the ALJ, the ALJ then inquired as to what RFC the record established, and he replied, "Well, I—she does light work at home. Whether or not she could do that on the job was the question. You know, your honor, for the life of me, I can't see why she couldn't do light work." (Tr. 47). He then went on to detail some postural and environmental limitations, but included no manipulative limitations related to the claimant's hands (Tr. 48). The ALJ then posed a number of hypotheticals to a vocational expert ("VE") to determine what jobs the claimant could perform based on certain RFC assessments. After identifying the jobs listed above, in response to certain hypotheticals that included no limitations regarding the claimant's hands, the ALJ then asked if a limitation to only *occasional* handling, fingering, feeling, and gripping would affect those jobs. The VE responded that all jobs would be precluded in such a situation (Tr. 67). However, the VE also testified that if the limitation was only to *frequent* use of the hands, the jobs would remain (Tr. 68).

In her written opinion at step four, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. As to the claimant's tremors, she noted Dr. Smiley's testimony recognizing the claimant's essential tremors but that neurological testing showed normal functioning and that she was able to perform activities of daily living despite some interference with fine handling (Tr. 23). The ALJ also noted that prescribed medications had not resolved the tremors (Tr. 23). She found that Dr. Smiley's opinion comported with the other medical evidence of record, including Dr. Cooper's examination which also noted the fine tremor that was not increased with intention efforts (Tr. 23). The ALJ further noted the 2014 treatment notes in which the claimant's tremors were noted as exacerbated by stress, that she was essentially asymptomatic aside from the fine tremors, and that there were no objective findings in the record of deficits in gross or fine manipulation (Tr. 24). She then recited verbatim notes from Dr. Miner's examination, in which he found she could, *inter alia*, button and unbutton a shirt, pick up and grasp a pen to write a sentence, and dress and undress adequately (Tr. 25). The ALJ then summarized in detail the treatment notes from the claimant's treatment at the Texas Institute for Neurological Disorders, noting the minimal tremors exhibited by the claimant as well as medication adjustments made (Tr. 25-26). She then found that the assessment of minimal tremors did not support the claimant's allegations as to the severity of her tremors, and further found that the limitation of exposure to vibrations sufficiently accounted for her tremors (Tr. 26). She then found the state reviewing physician opinions that the claimant could perform the full range of light work to be unpersuasive in light of the need for additional postural and environmental limitations (Tr. 27). She found,

7

however, that Dr. Smiley's opinion was persuasive because it was consistent with the medical evidence and even evidence received after the hearing (Tr. 27). She ultimately concluded that the claimant was not disabled (Tr. 28-29).

The claimant contends that the ALJ erred in her RFC assessment as to her hand tremors by failing to properly account for Dr. Smiley's assessment of her limitations. The Court finds that the ALJ did not, however, commit any error in his analysis. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior

8

administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The claimant's specific complaint is that the ALJ failed to account for Dr. Smiley's statement that her tremors would "interfere somewhat with fine handling and things like that" because she included no manipulative limitation in the RFC. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This is not borne out by the record, however, because the ALJ did specifically discuss Dr. Smiley's statement and functional assessment, including how his functional assessment was consistent with both Dr. Cooper's opinion and Dr. Miner's opinion, and how it was consistent with the neurological treatment records. Moreover, the statement regarding tremors and fine handling was given in the context of discussing the claimant's treatment record, not in assessing an RFC (Tr. 46). When asked what the record established as to an RFC, Dr. Smiley included no limitations related to her tremors (Tr. 47-47); indeed, it was the ALJ who added the limitation related to vibrations to account for the claimant's tremors. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton*, 79 F.3d at 1009-10. Moreover, the one statement by Dr. Smiley is not sufficient to rebut the ALJ's findings as to the claimant's functional limitations, particularly in light of the two consultative examination opinions and the neurological treatment record. In this case, the Court finds

9

that the ALJ set out the appropriate analysis, and cited evidence supporting her reasons, *i. e.*, she gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing these opinions. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") (citation omitted).

Contrary to the claimant's argument, the Court finds that the ALJ specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record, *and still concluded* that she could perform a limited range of light work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (citation omitted). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). The Court thus

finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

DATED this 22nd day of September, 2021.

_____
STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE